PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:15CR335-2 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| TALMAN HARRIS, ) | |
| ) | **MEMORANDUM OF OPINION &** |
| Defendant. ) | **ORDER** |

The Sixth Circuit held that, "[a]lthough Harris did not establish that Juror 12 was exposed to unauthorized communication, Harris did present a colorable claim of extraneous influence, which necessitated investigation." On remand, the Court conducted a *Remmer* hearing to effectuate such an investigation.[1] Prior to the hearing, the parties submitted briefs to the Court and Defendant had subpoenas duces tecum issued.[2] *See* ECF Nos. 359, 360, and 362. At the close of the hearing, the Court ruled that it found no basis for a new trial. The reasons for that decision are as follows.

## I. Law

"The landmark case on the topic of jury taint is *Remmer v. United States*, 347 U.S. 227, 229 30, (1954), in which the Supreme Court 'affirmed that juries in criminal cases must be free

---

[1] Counsel for both sides examined the witnesses.

[2] The documents responsive to the subpoenas were returned to the Court and distributed to counsel for both sides. ECF No. 353.

(1:15CR335-2)

of outside influences.'" *United States v. Walker*, 160 F.3d 1078, 1083 (6th Cir. 1998). In accord, the Sixth Circuit has articulated the following four-point procedure to adjudicate cases of impermissible juror contact:

> (1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the "*Remmer* hearing" is not inherently suspect.

*Id* at 1083 (citing *United States v. Rugiero*, 20 F.3d 1387, 1390 (6th Cir. 1994)).

In *Rugiero*, the Sixth Circuit held that the defendant must show either actual bias on the juror's part or actual prejudice.[3] *Id*. The next year, the Sixth Circuit expounded "[w]hen there is a credible allegation of extraneous influence[], the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." *United States v. Rigsby*, 45 F.3d 120, 124-25, (6th Cir. 1995). Very recently, the Sixth Circuit reiterated the Supreme Court's holding that due process does not require a new trial simply because a juror is placed in a compromising situation. *See Lang v. Bobby*, 889 F.3d 803, 811 (6th Cir. 2018) (*citing Smith v. Phillips*, 455 U.S. 209, 215-17 (1982)).

Against this backdrop, the following occurred.

---

[3] While Defendant states that there is a circuit split on which party has the burden of proof at *Remmer* hearings, he correctly notes that the Sixth Circuit has held that the burden is on Defendant. *See* ECF No. 359 at PageID #: 6991 (citing *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984)).

2

(1:15CR335-2)

## II. Background

Prior to the *Remmer* hearing, Juror Number 12 and Christian Goleno, his live-in girlfriend,[4] responded to subpoenas *duces tecum*. The subpoenas sought various documents that included internet search histories, phone records and messages, and various usage data on certain applications, like Snapchat. Both Juror Number 12 and Goleno were only able to produce copies of their Google search history. At the *Remmer* hearing, both Juror Number 12 and Goleno testified and were examined by counsel for both sides.

### A. Goleno's Testimony

Goleno testified to three points of critical importance. First, Juror Number 12 told her about the rule prohibiting juror research outside of court. Next, she understood the importance of a fair trial. Finally, she did not tell Juror Number 12 anything about what she found in her searches.

Goleno also testified that she did not recall having any conversations with Juror Number 12 about the trial as the trial was ongoing. She also testified that, although she and Juror Number 12 may have been under the same roof when she researched the case, Juror Number 12 would not have been looking at the (cell phone) screen on which she was conducting the search. She testified that Juror Number 12 was probably in the same room, but he likely would have been watching TV or playing a video game. Finally, Goleno testified that she attempted to view

---

[4] Juror Number 12 and Goleno were living together during the trial and the *Remmer* hearing.

3

(1:15CR335-2)

Defendant's Linkedin profile to see what Defendant looked like. She testified that she was unable to view Defendant's picture, because his account was set to private.

The Court found Goleno's testimony credible.

### B. Juror Number 12's Testimony

Juror Number 12's testimony revealed the following. On August 29, 2016 at 11:07 p.m., Juror Number 12 ran a search on an address associated with a witness at trial and likely did so out of curiosity.[5] Juror Number 12 added that he had no malicious intent in searching the address.

Earlier in the day, at approximately 5:19 p.m., Juror Number 12 attempted to run a search on one of the AUSA's. He knew he was not supposed to research on the case, but he did so anyway.

Juror Number 12 testified that Goleno did not give him printouts of anything related to Defendant, nor did she confide any of the results of her internet research to him. Juror Number 12 also testified that he would not have told the other jurors anything that Goleno may have told him. He also testified that his verdict in the case was based solely on the evidence in the courtroom.

Finally, Juror Number 12 testified that, in response to her pestering, he told Goleno the name of Defendant, even though he should not have done so. He also gave Goleno the names of the two attorneys that she searched.

---

[5] The jury was empaneled on August 23, 2016 and returned its verdicts on September 7, 2016.

4

(1:15CR335-2)

The Court found Juror Number 12 a challenging but credible witness.[6]

### III. Discussion

Juror Number 12 violated his oath as a juror. He should not have attempted to research the case, including the attorneys[7] or the witness' address. Nevertheless, Defendant has failed to show actual bias or prejudice. Suspicion does not inherently attach to a juror's testimony. And Juror Number 12's testimony, in combination with his search results, does not provoke suspicion of juror taint.

More specifically, Defendant has failed to show that Juror Number 12's research was prejudicial or reflects bias. That Juror Number 12 unsuccessfully attempted to research an attorney and input the judge's name in a search does not constitute unauthorized contact or show juror bias. The same conclusion is reached regarding Juror Number 12's research of an address related to a witness. Looking up the residence was improper, but the Court finds credible Juror Number 12's explanation - he did so to see the appearance of the property. Juror Number 12 did not research Defendant.

---

[6] The Court admonished Juror Number 12 during his examination by defense counsel. To this end, Defendant contends that his right to a fair trial cannot hinge on a juror's recollection about private conversations. This argument overlooks Goleno's credible testimony and the admonition, "due process does not require a new trial whenever a juror is placed in a compromising situation." *Lang*, 889 F.3d at 811.

[7] The spellings of Juror Number 12 and Goleno bear little resemblance to the actual spellings of the attorneys' names, so neither were successful in their searches. And tellingly, both used very different variant spellings, dispelling the notion they were colluding.

(1:15CR335-2)

Defendant's burden is not to show impropriety.  Rather, he must show actual bias or actual prejudice.  He has not shown either.  Therefore, the Court finds no basis for finding that Juror Number 12's research infringed on Defendant's right to a fair trial.

Key to this conclusion, and as stated above, the Court found credible both witnesses' testimony that Goleno did not discuss the results of her research with Juror Number 12. Therefore, Defendant has also failed to show unauthorized contact.  Also of significance is Juror Number 12's testimony that his verdict was based solely on the evidence presented at trial.

Thus, Defendant has failed to meet his burden.  He has not proven an unauthorized contact, let alone any that created juror bias or prejudice.[8]

### IV. Conclusion

Based on the foregoing, Defendant has not met his burden to show cause for a new trial. Re-sentencing shall occur as scheduled.

IT IS SO ORDERED.

| | |
|---|---|
|   August 15, 2018   |   */s/ Benita Y. Pearson*   |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[8] The Court incorporates its oral ruling made at the conclusion of the August 2, 2018 hearing.